# Commonwealth, Appellant, *v.* Steimling.

[Marked to be reported.]

*Criminal law—Acquittal of felony—Review—New trial—Twice in jeopardy.*

The Supreme Court will not reverse a judgment on a verdict of acquittal in a trial for felony, although the acquittal was the result of error committed by the judge in stating the law to the jury, where the commonwealth does not ask for a new trial.

Not decided whether a new trial can be ordered where a defendant has been acquitted upon an indictment charging a felony.

*Larceny—Trespass—Coal.*

Things pertaining to realty can only be the subject of larceny, when the act by which they are severed does not constitute " one and the same continuous act," as the act of asportation.

*Larceny of coal—Animus furandi.*

On an indictment for larceny it appeared that the prosecutor was the owner of a farm which was crossed by a creek. Along the shores and in the bed of the creek, particles of coal and culm had been deposited, being carried down by the current and floods from mines further up the stream. Defendant, descending the stream in a flat boat, entered upon the lands of the prosecutor, and began to gather coal from the surface. He was provided with a scoop or shovel made of strong wire or iron rods with which he gathered up the coal. The sand and gravel passed through the meshes of the scoop, leaving the pieces of coal within it. When the gravel was all sifted out, the clean coal was emptied upon the flat boat. This process was continued until a boat load was obtained. The boat was then towed or pushed to some bins belonging to defendant, and afterwards delivered to purchasers, or taken for consumption from the bins. *Held*, that defendant was not merely a trespasser, but was guilty of a carrying away and an actual conversion, and that the question of the existence of an animus furandi was for the jury.

Argued May 22, 1893. Appeal, No. 376, Jan. T., 1893, by the Commonwealth, from judgment of Q. S. Northumberland county, Dec. T., 1892, on verdict of not guilty, in favor of John Steimling. Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Indictment for larceny of coal.

The charge of the court was as follows, by SITTSER, P. J., of the 44th judicial district, specially presiding:

" John Steimling is charged in this indictment with the lar-

ceny of a quantity of coal, laid as the property of Jacob Bower. He is also charged in one count with knowingly mining coal on the land of another without the consent of the owner.

"The statute upon which the second count in this indictment is founded has been commented upon by counsel, and we say to you that we understand that statute to apply to cases where the coal lies in its original bed, and that it only applies to coal that has never been mined. In our opinion this statute was not intended to apply to a case where the coal had once been mined and then thrown into a stream and afterwards washed down the creek as refuse. So we say to you that there can be no conviction of the defendant upon the second count in the indictment.

"The first count in the indictment, which is for simple larceny, rests upon the common law, and various questions have been raised here. First, it is contended that the prosecutor in this case is not the owner of the property. Second, that this property was real estate and not the subject of larceny. Third, that the defendant took the property, whether it was real or personal, under a claim of right, and therefore ought not to be convicted.

"It seems this coal was lying in the bed of the creek; that it was taken out of the creek by the defendant with an implement made in the form of a scoop shovel, which was formed of wires, and so made that the water and small particles would go through, and the larger lumps of the coal be preserved; that he shoveled this coal from the creek on to a flat or boat; that he navigated the boat along the creek to a place where he had built a box on the edge of the creek, projecting over the edge some little distance, and erected there for the purpose of putting coal in, and that he sold the coal to various parties or used it himself.

"It also appears that this coal washed down the creek from collieries located above; that it was refuse that was thrown out by those collieries and in times of high water was washed down this creek and found lodgment at various places in the bed of the creek. Sometimes when there is a high flood it is carried over on to the valuable farming lands along the creek. We think there is no doubt but that this coal, when it is lodged there upon the flats each side the creek, or when it is in the

bed of the creek, belongs to the owner of the land and of the bed of the creek.

"Coal is a mineral and it is originally taken from the soil. It is originally a part of it and passes with the sale of the land. When it is mined the part of it that is valuable for sale is kept, and there is a great deal of refuse thrown away from the breaker that gets into the creek. It is still mineral. It is carried down the creek and lodges along the bed of the creek. It mingles to a certain extent with the soil. Gravel floats down the creek, moves along with the water, more or less, and so does sand. If some person should put a large quantity of gravel into the creek at the head of it, and that fine gravel should be carried down by high water until it got upon another man's land, it would not be pretended that the person who originally owned that gravel could follow down upon another man's land and reclaim it. So with the particles of sand that are continually being washed down a stream of water. Some lodge upon one man's land and some upon another, and no one would pretend that the man who might have originally owned that sand could follow it down the creek to another's land and pick out the particles as his own, even if he could identify it. Coal is a mineral and, like the gravel or like the sand, if it washes down the stream and lodges on another's land it certainly becomes part of the realty. The difference is simply in degree but not in principle.

"This coal, as I understand it, is put into the creek by the owners for the purpose of getting rid of it. They have entirely abandoned their title to this property. All they wish to do is to get it away from their mines, and they are very glad to get rid of it. Where property is abandoned and it washes down a stream, or is brought in any other way upon another man's land, the owner of the land is said to be in possession of that property sufficient to sustain larceny.

"There is a difference between a trespass and a larceny. Larceny is the felonious taking and carrying away of the property of another with intent to convert it to one's own use. Now, if we were simply to state to you that larceny was the taking and carrying away the property of another with intent to convert it to one's own use, we would not give you a correct definition of it. It is the felonious taking away, and without

the word feloniously there is no proper definition of larceny. We think this property in question was the property of Jacob Bower, and if the defendant took that property we think he took the property of another; but it must be personal property, and it must be taken with a felonious intent; that is, there must have been a guilty consciousness of wrongdoing, a surreptitious and clandestine taking with consciousness of guilt.   Where one goes on the property of another and takes it under a claim of right, believing that he has a right to take it, there is no larceny even if it be personal property : but this property we hold to be, in the first instance, real estate lying in the bed of the creek and belonging to the owner of the soil, and if the defendant separated it, he committed a trespass but not a larceny.   It may be that a man may take sand, or gravel, or coal, or timber, or any other like thing, sever it from the real estate, abandon it and leave it there in the possession of another in its severed condition, and then go back, after an interval of time, and take the property and be convicted of larceny for so doing; but it is because he does not keep the continued possession of the property which he has taken from the owner.   If it be a continued possession the mere setting it down and taking it up again would not make it a larceny.   So here this coal is taken from the bed of the creek and put on a float, still in the possession of the trespasser.   It is then put in these bins on the bank of the creek still in the possession of the trespasser, and all we can say is that the defendant in this case has committed an undoubted trespass upon the property of the prosecutor, but we cannot say that he has committed a larceny.

" So we say to you that under the evidence in this case we think you should find the defendant not guilty.   The evidence is not sufficient to justify you in finding the defendant guilty of larceny."

Verdict, not guilty.   The Commonwealth appealed.

*Error assigned* was charge of court, quoting it.

*C. B. Witmer, Voris Auten,* district attorney, and *S. B. Boyer* with him, for appellant.—We will not contend that a prisoner once acquitted can be put in jeopardy the second time for the

same offence, but we believe that where a case is brought up from a lower court by the commonwealth, as a test case, the Supreme Court can and should examine the error assigned and reverse a judgment, if found erroneous, although no new venire can be awarded.

Realty is not the subject of larceny, but larceny can be committed of things real, when severed from the realty, by a thief, of the owner, and taken from its place; or, in other words, if the thing is detached, by the hand of man, in such a manner as will indicate to a passer-by that it was not intended to be used any longer in connection with the realty : Whart. Cr. L., 8th ed. § 864; Bish. Cr. L., 4th ed. § 781.

No brief filed for appellee.

OPINION BY MR. JUSTICE WILLIAMS, July 19, 1893 :

The indictment on which the defendant was tried in the court below contained two counts.   One of them charged a larceny at common law.   The other was drawn under the act of May 8, 1876, P. L. 142.   The learned judge by whom the trial was conducted instructed the jury that there could be no conviction upon the first count, because the acts alleged to constitute the larceny amounted to no more than a trespass ; and that there could be no conviction upon the second count, because the act of 1876 was not applicable upon the facts shown.   Being of the opinion that there could be no conviction upon the indictment, he said to the jury : " We think you should find the defendant not guilty.   The evidence is not sufficient to justify you in finding the defendant guilty of larceny."   A verdict of not guilty followed.

The commonwealth appealed, and now asks us to review the doctrine laid down by the trial judge in his general charge, on the distinction between trespass and larceny, and to reverse the judgment.   The defendant having been tried and acquitted upon an indictment charging a felony, we do not see how we can reverse the judgment and award a venire facias de novo. Even when, as in this case, the acquittal is the result of error alleged to have been committed by the judge in stating the law to the jury, the right to direct a new trial is involved in great doubt.   When it is the result of the action of the jury upon the

evidence the verdict is final, notwithstanding it may be against the weight of the evidence.    People v. Mather, 4 Wendell, 230 ; People v. Comstock, 8 Wendell, 549.    In Massachusetts the same rule prevails as to felonies, but in misdemeanors a new trial may be ordered after a conviction, at the instance of the defendant.    The same rule appears to be held in England.    In this state I do not find that the precise point has been decided, and as counsel for the commonwealth assure us that they do not ask a new venire in this case, it is not necessary now to determine it.    The judgment must be affirmed, because it rests on a verdict of acquittal in a trial for felony.    We do not however wish to be understood as assenting to the statement of the law applicable to the facts of this case made by the learned judge to the jury.

It appeared on the trial that Bower, the prosecutor, was the owner of a farm which was crossed by Mahanoy creek.    Some distance up the stream coal mines were in operation and had been for many years.    The culm and waste from the mines and breaker, which had been thrown into, or piled upon the bank of the creek, had been carried down the stream by the current and the floods, and deposited in the channel and along the shores in considerable quantities.    This material having been abandoned by its original owners belonged to him on whose land the water left it.    The water dropping the heavy pieces first and carrying the smaller particles and dust along in the current served as a screen ; and as the result of this process considerable quantities of coal suitable for burning were lodged along the channel and the banks of the stream throughout its course over the prosecutor's farm.    The defendant descending the stream with a flat boat entered upon the lands of Bower and began to gather coal from the surface.    He was provided with a scoop or shovel made of strong wire or iron rods with which he gathered up the coal.    The sand and gravel passed through the meshes of the scoop, leaving the pieces of coal within it.    When the gravel was all sifted out the cleaned coal was emptied upon the flat boat.    This process was continued until a boat load was obtained.    The boat was then towed or pushed to some bins on the shore opposite to Bower's house and the coal was transferred from the boat to the bins.    This was repeated until from eight to twelve tons of coal had been gathered, cleaned, deposited on

the boat, transported to the bins and unloaded.  This coal was afterwards delivered to purchasers, or taken for consumption, from the bins.  Here was a taking with intent to carry away and convert, a carrying away and an actual conversion, which the commonwealth held sustained the indictment for larceny. The learned judge however instructed the jury that the process of collecting, cleaning, loading upon the flat boat, transporting to the bins, and unloading the coal into them, must be regarded as one continuous act, like the act of him who tears a piece of lead from a building and carries it off; or who passing an orchard plucks fruit and takes it away; and that the defendant was therefore a trespasser only.  The distinction in the mind of the learned judge was that between real and personal estate. The coal lying upon the surface he held to be real estate.  The lifting it up in the shovel was on this theory a severance which forcibly changed its character and made it personal.  The loading into the flat boat, the transportation to the bins, and unloading of the boat, all of which acts were done within the lines of the prosecutor's land, and occupied hours of time for each boat load, were so connected with the severance as to make but a single act.  For this reason he held that the defendant was guilty of a trespass only.  The common law did distinguish between things that are connected with or savor of the real estate, and those that are personal goods.  An apple growing upon a tree was connected with the land by means of the tree that bore it, and so held to partake of the nature of the land and to be real estate.  One who plucked it from the tree and at once ate or carried it away was therefore a trespasser; but if he laid it down, and afterwards carried it away, so that the taking and the asportation were not one and the same act, then if the carrying away was done animo furandi the elements of larceny were present.

Blackstone tells us, in vol. 4, p. 233, of the Commentaries, that larceny cannot be committed of things that savor of the realty, because of " a subtility in the legal notions of our ancestors." He then explains the subtile distinction as follows: " These things (things that savor of the realty) were parcel of the real estate and therefore while they continued so could not by any possibility be the subject of theft, being absolutely fixed and immovable.  And if they were severed by violence so as to be

changed into movables, and at the same time, by one and the same continued act, carried off by the person who severed them, they could never be said to be taken from their proprietor in their newly acquired state of mobility." But he explains that if the act of severance and that of carrying away be separated, so that they do not constitute "one and the same continued act," the subtile distinction between personal goods and those that savor of the real estate ceases to protect the wrongdoer from a criminal prosecution, and a charge of larceny can be sustained. The question whether this coal lying loose upon the surface, like other drift of the stream, was real or personal estate does not seem to have been raised in the court below, and it is not before us.

The real question presented is whether this case upon its facts is one for the application of the common law rule. Have we here a severance and an asportation that constitute "one and the same continuous act?" If the picking of the coal from the surface be treated as an act of severance, we have next the act of cleaning and sifting; then the deposit of the cleaned coal upon the flat boat little by little; then the transportation of the boat load to the bins; then the process of shoveling the coal from the boat into the bins.

The acts occupying considerable time for each boat load were all done within the inclosures of the prosecutor. It is as though one should come with team and farm wagon into his neighbor's corn field and pluck the ears, load them into the wagon, and when the wagon would hold no more, draw the corn away to his own corn house; and then return again, and continue the process of harvesting in the same manner until he had transferred his neighbor's crop to his own cribs. If such acts were done under a bona fide claim of title to the crop, they would not amount to larceny, but if done animo furandi all the elements of larceny would be present. In the case before us, it is conceded that the coal belonged to Bower, and was in his possession as part of his real estate. The defendant entered his lands for the purpose of collecting coal and carrying it away. He makes no bona fide claim of title; no offer to purchase; sets up no license; but rests on the proposition that, like the man who plucks an apple from a tree and goes his way, he is liable only as a trespasser. If this be true he could gather the

coal from Bower's land as often as the stream made a sufficient deposit to justify the expenditure of time necessary to gather, clean, transport and put it in bins.    Upon the same principle he might gather all the crops growing on Bower's farm as they matured, and, by hauling each load away when it was made up, defend against the charge of larceny, on the ground that the gathering from the tree, the stalk, or the hill, the loading into wagons, and the carrying of the loads away, though occupying hours for each load and many days for the crop, was "one and the same continuous act" of trespass.    We cannot agree to such an extension of the common law rule, but are of the opinion that this case should have gone to the jury on the existence of the animo furandi.