THE WILLIAM WILKENS COMPANY *vs.* CONSOLIDATED AGRICULTURAL CHEMICAL COMPANY.

1. CONTRACTS—PLEA—NON ASSUMPSIT—EFFECT.

Under a plea of non assumpsit in an action on contract, defendant may prove in bar, not only that no promise was in fact made, but any matter which shows that plaintiff had no cause of action at the time of suit brought, as insufficient or illegal consideration, usury, fraud, duress, etc.; but he may not prove the happening of a condition subsequent in defeasance of an express contract, unless urged by special plea.

2. PLEADING—DEMURRER TO PLEA—EFFECT.

A general demurrer to a plea admits all matters of fact sufficiently pleaded, applying to the entire ground of defense as stated in the plea, and not to any specific defect therein, which could only be reached by special demurrer.

3. SALES—PERFORMANCE—EXCUSE—"SUSPENDED"—INABILITY TO PERFORM—"INTERFERENCE".

A contract for the sale of wet hair waste, to be used by the buyer in the manufacture of fertilizer, provided that the contract was subject to suspension in case of fire or other unavoidable accident to machinery or works of the producers or users of the material, or any other "interference" by which they were prevented from producing or using the material. After part had been delivered the state board of health examined the buyer's works, where the hair was ground in a mixer, which was the only manner in which it could be used. The buyer's plant was found to be a nuisance because of odors arising therefrom, and an order was entered directing the buyer to abate the nuisance within a specified date, which prevented the further use of the hair. *Held*, that the word "suspended", as used in the contract, meant more than mere postponement, since it must have been the intention of the parties that the hair should be used by the buyer in accordance with its facilities, and, this having been prevented without fault on its part, there was "other interference" by which the buyer was prevented from using the material, relieving it from liability for breach of the contract in refusing to accept further deliveries.

(*December* 5, 1913.)

Judges BOYCE, WOOLLEY and RICE sitting.

*William S. Hilles* for plaintiff.

*Hugh M. Morris* (of *Saulsbury* and *Morris*) and *James I. Boyce* (with *Saulsbury* and *Morris*) for defendant.

Superior Court, New Castle County, November Term, 1913.

ACTION OF ASSUMPSIT (No. 38, September Term, 1912) by the William Wilkens Company against the Consolidated Agricultural Chemical Company. On general demurrer to defendant's special plea. Overruled.

The facts and contentions appear in the opinion of the court.

BOYCE, J., delivering the opinion of the court:

This is an action of assumpsit brought by the William Wilkens Company against the Consolidated Agricultural Chemical Company to recover damages for the alleged non-performance of a certain contract entered into between the parties, as follows:

"Baltimore, Md., February 24th, 1911.

"Sold to Consolidated Agricultural Chemical Company, Wilmington, Del., for account of the William Wilkens Company, Baltimore, Md.

"Stock on hand and entire production to February 1st, 1912, estimated about ten (10) to twelve (12) car loads of wet hair waste, represented by sample received from sellers on the fourteenth inst. and submitted to buyers under our No. 9088, but no analysis guaranteed, at ten dollars and twenty-five cents ($10.25) per ton of two thousand pounds f. o. b. Baltimore and Ohio Railroad cars, sellers' switch, Baltimore, Md.

"Shipment in bulk in car load lots as ready.

"Settlement on weights ascertained at point of shipment.

"Terms:—Prompt cash upon arrival.

"It is mutually agreed and understood by both sellers and buyers that the above contract is made subject to suspension in case of fire or other unavoidable accidents to the machinery or works of the producers or users of the material or any other interference by which they are prevented from producing or using the material, otherwise to be carried out in good faith. Executed in duplicate, buyers and sellers each furnished with a copy of this sale note.

"No responsibility assumed unless by special agreement. [Signed] The William Wilkens Company, Gustav A. Schlone, Pres. [Signed] Thos. H. White & Co., 'Licensed Merchandise Brokers."

The declaration contains a special count on the provisions of the contract, omitting the conditions subsequent, and also certain common counts. To each of the counts, the defendant pleaded non assumpsit, payment, set-off, and a special plea averring in terms the clause of the contract providing against contingencies, and then alleged excuse for non-performance, as follows:

"That the said defendant at the time of entering into said contract was engaged in the manufacture of fertilizer at its plant, located in or near the Town of Newport, New Castle County and

State of Delaware, of which fertilizer hair waste was an ingredient; that in using wet hair waste in the manufacture of fertilizer, it is necessary to and the said defendant did, at its said plant, place said waste in a mechanical device known as a mixer, and therein agitate the same with acid and certain other ingredients or ingredient of said fertilizer; that the action of the acid upon the said waste in said mixer caused certain offensive and noxious odors to be emitted, which odors at times pervaded the vicinity of the said plant of the said defendant; that there was not in the months of February, March, April and May, A. D. 1911, a local Board of Health in the said Town of Newport; that on the sixth day of April, A. D. 1911, the President of the Board of Health of the State of Delaware directed James A. Draper, a member of the said the Board of Health of the State of Delaware, together with Abram E. Frantz, the Secretary of the said the Board of Health of the State of Delaware, to investigate certain complaints theretofore made in writing to the said the Board of Health of the State of Delaware, pertaining to the said odors emanating from the said plant of the said defendant, and the said James A. Draper, a member of the Board of Health of the State of Delaware, as aforesaid, together with Abram E. Frantz, the Secretary as aforesaid, investigated said complaints, and found a nuisance to exist by reason of said odors at said plant of the said defendant, and the state board of health of the State of Delaware did thereafter, to wit, on the fourteenth day of April, A. D. 1911, order the said defendant to abate the nuisance aforesaid, within twenty-one days from the said fourteenth day of April, A. D. 1911; that by reason of the premises the said defendant was prevented from using the said wet hair waste."

[1] To this special plea the plaintiff filed a general demurrer to which there was joinder. At the outset of the argument, it was suggested rather than seriously urged that the matter of defense shown by the plea could be given in evidence under the general issue. To this suggestion, we may say that in actions of assumpsit, whether on express or implied contracts, through relaxation from the strict principles of pleading anciently observed, it is permissible under non-assumpsit to prove, in discharge of

the action, not only that no promise was in fact made, but almost any matter which shows that the plaintiff had no cause of action at the time of the bringing of the suit—such matter, for instance, as insufficient or illegal consideration, usury, fraud, duress, and the like. We think, however, that a condition subsequent in defeasance of an express contract could not be shown under the general issue, but that it is properly the subject of a special plea. The plea in this case, therefore, is not bad as amounting to the general issue.

Apart from the suggestion of which we have just disposed, the plaintiff substantially contends that there is nothing in the plea which would relieve the defendant from the performance of the contract declared on,—(1) because the stipulation specially pleaded entitles the defendant at most to "suspend" and not to rescind the contract; (2) because it does not appear that the plaintiff had any knowledge of the purpose for which the hair was to be used, or that it was in the mind of the defendant to use it for any particular purpose, or, assuming that the defendant was prevented from continuing its business at its plant in Newport, that it was still absolutely prevented from using the material at some other place or for some other purpose; (3) because the plea does not show that the defendant was "prevented" from operating its plant by the Board of Health, but shows only that the defendant was required to abate a nuisance; and (4) because the defendant cannot by a violation of the law excuse itself from the performance of a contract.

To these contentions the defendant, in substance, replies: (1) That the parties expressly stipulated in the contract beyond the delivery of the goods; (2) that they had in contemplation the works and machinery of both, the use as well as the production of the wet hair waste, the nature and the incidents of the business of both, and also the probable causes of interference with either, that the contract must be construed with reference to the manner in which such production and use are ordinarily conducted, and that it must be supposed that the parties contemplated, among other things, such interference as the action of the Board of Health; (3) that time being of the essence of the contract,

the word "suspension" does not mean postponement only, and that the plea shows, argumentatively, at least, that the action of the Board of Health prevented the intended use of any of the material during the period covered by the contract; and (4) that in view of the mutual footing of the parties under the contract, impossibility of performance by force of law is of itself sufficient to excuse the defendant.

[2, 3] The questions presented necessarily involve a construction of the contract sued upon, and it is the duty of the court to construe it. Before doing so, however, we ought to say that it is a well established rule that a general demurrer admits all such matters of fact as are sufficiently pleaded. The demurrer goes to the entire ground of defense as stated in the plea, and not to any specific defect in the plea. Hence it amounts to an admission of the matters demurred to though they be informally pleaded. Matters of defect purely inferential or argumentative can be reached only by a special demurrer. In this case, the defendant having averred an excuse for non-performance of the contract for the reasons alleged in its plea and the plaintiff having by a general demurrer confessed those allegations and the logical inferences from them, they must, for the purpose of our decision, be taken to be true. If the plaintiff had made replication to the plea or any substantial part thereof, the jury must have tried the issues of fact thus raised. There is nothing in the pleadings from which it can be inferred that the action of the Board of Health was temporary, and if the action was permanent, then the word "suspended" as used in the contract must mean more than postponement only. *Hull Coal & Coke Co. v. Empire Coal & Coke Co.*, 113 *Fed.* 256, 51 *C. C. A.* 213.

The only question which remains to be considered is whether the defendant by reason of the premises laid in its plea is excused from the performance of the contract. It is a general rule of law that a contract must have a reasonable construction according to the intent and object of the parties. The subject-matter of the contract, its purpose, and the situation of the parties are material to determine their intention and the meaning of the language employed by them in making it; and, applying this general rule

to the stipulation in the present contract, it seems quite clear that it was the intention of the parties that whatever contingencies would excuse non-performance by one of them would similarly excuse non-performance by the other.

It seems clear, also, that within the meaning and scope of the stipulation, they had in contemplation the works and machinery of both parties, and the use as well as the production of the wet hair waste. If this be so, they must be supposed to have had in mind the nature and incidents of the business of use as well as that of production and the possible causes of interference with either. The contract must be construed, therefore, with reference to the manner in which such businesses are usually conducted. *D., L. & W. R. R. Co. v. Bowns*, 58 *N. Y.* 573.

It is obvious that it was the intention of the buyers to buy and of the sellers to sell the wet hair waste *produced* at the works and by the machinery of the sellers; and in legal contemplation, at least, it was the intention of the parties that the material was to be used at the works and in the machinery of the buyers. Hence, under the express stipulations in the contract, it must be supposed that the plaintiff had knowledge of the manner in which the business of the defendant was conducted.

After having made provision against the contingencies of fire or other unavoidable accidents to the machinery or works, what kind of contingency or interference was within the contemplation of the parties when they further provided against "any other interference"? Was it not such interference as could not definitely be foreseen? Without attempting to suggest any of the other possible contingencies which the parties may have had in contemplation we think it sufficient to say that the interference preventing the use of the hair at the works of the defendant which arose from the action of the Board of Health subsequent to the contract and in the absence of bad faith on the part of the defendant, is within the meaning of the stipulation in the contract. To hold otherwise would be to deprive the stipulation of its obvious and reasonable meaning; and although it is true, as was urged, that courts ordinarily seek to sustain the obligation of a contract where the intention of the parties is ambiguous or uncertain,

nevertheless, it is equally true that where the intention is unequiv-ocally expressed, it is the duty of courts to enforce such intention even though non-performance of the contract is thereby excused.

In view of these conclusions it is not necessary to discuss the maxim that no man can take advantage of his own wrong, or the rule that impossibility by force of law is an excuse for non-per-formance of a contract absolute in terms. We might say, however, that in view of the mutual footing of the parties under their expressed stipulations, we think that the principle of the cases, *Hughes v. Wamsutta Mills*, 93 *Mass.* (11 *Allen*) 201, and *Labaree v. Crossman*, 100 *App. Div.* 499, 92 *N. Y. Supp.* 565, cited by the defendant, would be applicable even if the stipulations were not broad enough reasonably to include the action by the Board of Health. In other words, such action by the board at the works of the producers would have excused non-performance on their part in the absence of any stipulations; and under the contract, such action at the works of the users would have excused the users though the parties had not expressly provided against that con-tingency by the phrase "any other interference."

For the maxim that no one may take advantage of his own wrong to have any application in this case, it should appear that the causes which led to the action of the Board of Health were created by the defendant negligently or with a design to termi-nate the contract. Under the general demurrer, it must be taken to be admitted that the defendant could not have used the hair at its works (which were, as we have said, contemplated by the parties) in any other manner than it did. Whether any effort, sufficient under the terms and within the meaning of the con-tract, was made by the defendant to use the hair so that the Board of Health would not interfere; or whether, having inter-fered, like effort was made to have the order suspended; or whether the order was only temporary and did not continue throughout the period covered by the contract, so that the defend-ant, for at least a part of the period, could have used the hair; are issues that might be raised by appropriate replications to the plea.

For the reasons given, it is the opinion of the court that the plea is sufficient, and that judgment ought to be for the defendant.

The demurrer, therefore, is overruled.