### COAL & DELIVERY CO., Inc., v. HOWARD et al.

(Circuit Court of Appeals, Third Circuit. May 18, 1920.)

No. 2495.

1. Contracts ☞143—Rule for construction of ambiguous writing.

   Where a written contract is ambiguous, the court should, so far as possible, put itself in the position of the parties at the time it was made, and from a consideration of the writing itself, its purpose, and the circumstances surrounding the transaction endeavor to ascertain upon what sense and meaning of the terms used their minds met.

2. Deeds ☞143—Reservation of culm piles construed.

   Where the owner of land on which were culm piles leased the right to wash the same on royalty to be paid on shipment and agreed to furnish lessee free of charge "room to dump the refuse slate, culm, etc.," and afterward, while the washing was in progress, sold the land to lessee, reserving "all culm piles belonging to the grantor located upon the land * * * and any coal or culm that may have been washed or may be washed and dumped for storage or otherwise" upon the land, such reservation *held* to cover the unwashed culm piles and the washed coal or culm while awaiting shipment, but not to include the "refuse, slate, culm, etc.," from the washings, which was at that time of no value.

Appeal from the District Court of the United States for the Middle District of Pennsylvania; Charles B. Witmer, Judge.

Suit by the Coal & Delivery Company, Inc., against H. W. Howard and others. Decree for defendants, and complainant appeals. Affirmed.

Knapp, O'Malley, Hill & Harris and O'Brien & Kelly, all of Scranton, Pa. (Greene & Hurd, of New York City, of counsel), for appellant.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

M. J. Martin and R. W. Rymer, both of Scranton, Pa., for appellees.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. The bill of complaint of the Coal & Delivery Company, Inc., to enjoin the removal by the defendants, H. W. Howard and others, of certain piles of material, designated by the plaintiff as coal or culm and by the defendants as silt or slush, claimed by both the plaintiff and the defendant, but located upon the lands of the defendant, was dismissed by the court below upon the theory that such material was not the property of the plaintiff. The case is here upon appeal from the decree of dismissal. The plaintiff does not claim to be entitled to a decree against any of the defendants except Howard, who is herein considered as the only defendant. The basic question is that of title to the material.

Prior to 1894 and for some years thereafter Pennsylvania Coal Company was the owner of a tract of land in Wayne county, Pa., with certain culm piles thereon. These culm piles were accumulations of dry screenings from its breaker, located at the terminus of its gravity railroad and point of reshipment. Being such owner, the Pennsylvania Coal Company, on July 6, 1894, made with M. F. Dolphin an agreement, in part as follows:

"Whereas, the Pennsylvania Coal Company owns certain culm piles at Hawley, Wayne county, Pennsylvania;

"And whereas, the party of the second part is desirous of leasing, on royalty, for the purpose of rescreening or washing said culm piles, and shipping *coal* from said culm piles to market:

"Now, therefore, the party of the first part, for itself, its successors and assigns, hereby agrees to accept the following prices for the sizes named, and the party of the second part hereby agrees to pay to the party of the first part, its successors or assigns, the following named prices for the sizes named: For chestnut, thirty (30) cents per ton of 2.240 pounds; pea coal, twenty (20) cents per ton of 2,240 pounds; buckwheat, ten (10) cents per ton of 2,240 pounds; and all sizes smaller than buckwheat, including all shipments of culm, five (5) cents per ton of 2,240 pounds. The payments for shipments made by the party of the second part, from the culm piles herein referred to, are to be made to the Pennsylvania Coal Company by the 15th day of each month for all coal shipped the previous month. The meshes or sizes of screens to be used by the party of the second part in rescreening or washing *culm* from culm piles above mentioned to be as designated by the party of the first part.

"The party of the first part hereby agrees to grant to the party of the second part, free of charge, the use of sufficient land for the erection of a washery and room to dump the refuse slate, culm, etc., coming from the preparation of said product." (Italics ours.)

The rights of Dolphin were acquired by the Hawley Coal Company, and early in 1896 it erected a washery on the land of the Pennsylvania Coal Company and near or between the southern bases of the culm piles. Operations were begun, and the "refuse slate, culm, etc., coming from" the washery, accumulated upon the southern portion of the tract. When the washery operation was discontinued, probably about 1901, the pile of "refuse slate, culm, etc.," covered

much of the southern portion of the tract to a depth in places of probably 25 feet and amounted to about 60,000 tons. This is the material, title to which is claimed by the plaintiff, and which was being removed by the defendant at the time of the institution of this suit. This claim of title arises out of a deed of the Pennsylvania Coal Company, made on September 13, 1897, conveying the southern portion of its lands to the Hawley Coal Company. The tract conveyed contained about 8 acres and was described by metes and bounds. Immediately after the description in the deed is the following provision:

"* * * Excepting and reserving all culm piles belonging to the grantor located upon the land herein described and any coal or culm that may have been washed or may be washed and dumped for storage or otherwise upon the said described premises."

At the time of the filing of the bill of complaint herein the plaintiff had through divers mesne conveyances acquired the rights and property retained under the foregoing reservations and exceptions by the Pennsylvania Coal Company, and by other like conveyances the title to the 8-acre tract conveyed to the Hawley Coal Company by the foregoing deed was then vested in the defendant herein. At the hearing before the master the issue was clearly defined by the counsel for the respective parties thus:

"The plaintiff would be willing to put on the record that its claim in this case arises under the exception and reservation contained in the deed from the Pennsylvania Coal Company to the Hawley Coal Company, dated September 13, 1897, as follows: [As above quoted.]

"The plaintiff further agrees that, if the material being removed or sought to be removed by the defendant is not within the terms of the reservation above quoted, then, so far as the plaintiff is concerned, the defendant has the right to remove such material.

"The defendant agrees to the above, and further states that, in case it is held that the material being removed or sought to be removed by the defendant is within the terms of the reservation above quoted, then the defendant has no right to remove the same."

Consequently the sole question here involved is whether the "refuse slate, culm, etc., coming from" the washery operation is embraced within the above-quoted reservation and exception.

[1] Each party insists that the language of the exception is not ambiguous. The plaintiff asserts it could not more clearly embrace the material in question, and the defendant with like assurance declares it makes no reference thereto. That the language of the exception is ambiguous we think cannot be seriously questioned. Hence there devolves upon us the duty of ascertaining and giving effect to the mutual intentions of the parties as expressed in the deed embodying the foregoing exception. The fundamental rule for the discovery of those intentions is that the court, so far as possible, should put itself in the position of the parties to the contract when their minds met upon the terms of the instrument, and then, from a consideration of the writing itself, its purpose, and the circumstances surrounding the transaction, endeavor to ascertain upon what sense and meaning of the terms used the minds of the parties actually met. A. Leschen & Sons Rope Co. v. Mayflower G. M. & R. Co., 173 Fed. 855, 97 C. C.

A. 465, 35 L. R. A. (N. S.) 1; Wilkens Co. v. Consolidated Agr'l Co., 27 Del. (4 Boyce) 423, 89 Atl. 5; Elliott on Contracts, § 1508.

[2] At the time the deed in question was made the Hawley Coal Company had, with the written consent of the Pennsylvania Coal Company, acquired all the rights and privileges in the lease (above referred to) of the latter company to Dolphin. The Hawley Company was then engaged, and for some time had been engaged, under the terms of the lease, in washing the original culm piles located on the lands of the Pennsylvania Coal Company. The washing resulted in a merchantable product and a residuum. The merchantable product was designated in the lease by the parties, interchangeably, as "coal" and "culm." The synonymity of these two words of the lease, italicized by us, is shown, we think, not only by the general arrangement of the lease, but also by the concluding words of the last-quoted paragraph, namely, "coming from the preparation of said product." The "culm," for which the price of 5 cents per ton was to be paid, was the composite material of the original culm piles. The residuum was denominated "refuse slate, culm, etc." The Hawley Company was paying to the Pennsylvania Company for the merchantable product the prices specified. The meshes or sizes of screens used by the Hawley Company in washing the coal or culm from the original culm piles were as designated by the Pennsylvania Company. It was to the interest of the latter company that as much pay coal or culm as possible should be obtained from the original culm piles; and we find from the evidence that the screens used saved, not only chestnut, pea, and buckwheat, but also "bird's-eye" and "flea-eye," the mesh of the screen for the last-named coal being described "as about the size of the head of a pin." Such was the salvage or merchantable product obtained from the original culm piles. But there was also the residuum —the material here in controversy. A screen test of eight samples taken from the piles of waste shortly before the trial gave the following results as to size, viz.:

Buckwheat No. 2..................................... 2.38%
Buckwheat No. 3......:...............................26.08%
Dust ...............................................71.54%

The material consisted of slate, coal, rock, sulphur, and dirt. The parties to the lease, not only gave to this material a name, but by that name expressed their view of its value. It was not called "coal" or "culm," as was the merchantable product, but "refuse slate, culm, etc." Webster defines "refuse," as an adjective, thus:

"Refused; rejected; hence, left as unworthy of acceptance; of no value; worthless."

But the lease speaks still further. It says:

"The party of the first part [the Pennsylvania Company] hereby agrees to grant to the party of the second part [the Hawley Company, by assignment], free of charge, the use of sufficient land for the erection of a washery and room to dump the refuse slate, culm, etc., coming from the preparation of said product."

The Pennsylvania Company did not require the preservation of the "refuse slate, culm, etc." On the contrary, the latter company grant-

ed to the lessee "the use" of land for the refuse. "Use," says Webster, is:

"The act of employing anything, or of applying it to one's service."

The lands in question were used by the Hawley Company, under the above provision of the lease, for its own benefit and in its own service—not in the service of the Pennsylvania Company. They were, under the terms of the lease, in legal effect, the lands of the Hawley Company, so far as the "refuse slate, culm, etc.," was concerned. All this is utterly irreconcilable with the theory that the title to the "refuse slate, culm, etc.," remained in the Pennsylvania Company, but, on the contrary, evinces abandonment by the Pennsylvania Company, and supports the claim of title thereto asserted by the Hawley Company. In Commonwealth v. Steimling, 156 Pa. 400, 27 Atl. 297, the Supreme Court of Pennsylvania, where was involved a question of title to culm deposited along the banks and in the bed of a stream, held in substance, that where material has been abandoned by its original owner and deposited on lands of another by the owner or with his knowledge, it becomes the property of the person who owns the land upon which the material has been deposited. If anything further be needed to support the finding of abandonment of the "refuse slate, culm, etc.," by the Pennsylvania Company, or its ownership by the Hawley Company, it is found in the testimony of each of the plaintiff's witnesses in chief and some in rebuttal. They testify in substance that at the times in question washery refuse was a waste product of no value, and the problem was how to get rid of it, not how to save it. It first acquired a salable value only within the last few years, when, as shown by the evidence, everything has been marketed—even the "rock" piles.

At the time the deed was made, further circumstances were that the washery was in operation, with no suggestion of discontinuance. The Hawley Company was under the lease required to make payment for coal and culm, not before washing or immediately thereafter, but "by the 15th day of each month for all coal shipped the previous month." It was at liberty to wash as much as it pleased, when it pleased, and ship when it pleased. It paid only after shipment. The northern boundary line of the tract proposed to be conveyed to the Hawley Company ran through the bases of the original culm piles, or rather through the scallops of the base of the original culm pile, placing a portion thereof upon the tract about to be conveyed, but leaving the bulk thereof upon the lands to be retained by the Pennsylvania Company. Upon the tract to be conveyed there were also comparatively small piles of dry culm, which had served as railroad track fills, and the piles of "refuse slate, culm, etc.," that had theretofore come from the preparation of the merchantable coal or culm. Such was the position of the parties when the deed was made conveying the 8 acres, but—

"excepting and reserving all culm piles belonging to the grantor located upon the land herein described, and any coal or culm that may have been washed or may be washed and dumped for storage or otherwise upon the premises."

The plaintiff says that the exception and reservation extends—

"to two distinct classes of objects: First, to all culm piles existing at the time on the 8-acre tract and unwashed. This part of the reservation obviously referred to the comparatively small piles which had served as railroad track fills, and also to the edge of the large pile which overlapped some 50 feet or so the upper edge of the 8-acre tract."

This is conceded by the defendant. The plaintiff continues:

"The second class of objects to which the reservation applied by the second portion thereof is none other than (1) the coal or culm which had already been washed by the Hawley Coal Company and transferred from the large dry culm pile to the land in question, and (2) to the coal or culm from the said large culm pile which under the lease agreement of 1894 was being and was expected to be washed and transferred to the pile already started."

This contention the defendant denies. The portion of the exception upon the construction of which the parties differ is:

"Excepting and reserving  *  *  *  any coal or culm that may have been washed or may be washed and dumped for storage or otherwise upon the said described premises."

In brief, the plaintiff contends that these words are leveled at the "refuse slate, culm, etc.," theretofore or thereafter washed (conveyed by the aid of water) or placed upon the land sold, while the defendant urges that they are directed at any unshipped marketable coal or culm, separated by washing from the original culm piles, that then "may have been" upon the land or that thereafter "might [may] be" thereon.

The construction urged by the plaintiff is beset with many obstacles. If the "refuse slate, culm, etc.," was "culm" and belonged to the grantor, as is insisted by the plaintiff, the piles of refuse then upon the land were "culm piles" and were embraced within the exception of "all culm piles belonging to the grantor located upon the land herein described," and the remaining words of the exception are superfluous. But a construction resulting in superfluous words must, if possible, be avoided. Yet, if the refuse is not "culm," it does not fall within the second part of the exception. Consequently the plaintiff, at the very outset, appears to be on the horns of a dilemma. Again, that there was "refuse slate, culm, etc.," upon the land conveyed was known beyond all question to the grantor. If the second part of the exception was intended to include this then how shall we explain the use of the verb "may have been," denoting uncertainty, or doubt of the presence of the refuse upon the land, instead of the verb "has been."

Furthermore, the plaintiff's contention is inconsistent with abandonment of the refuse by the grantor or an implied conveyance of it to the lessee. The lessee did not, by acquiring the fee, surrender any rights. On the other hand, the contention of the defendant is consistent with all the facts and circumstances surrounding the transaction. The "culm piles," including the comparatively small piles that had served as railroad track fills and the portions of the larger original piles that were on the lands conveyed, were excepted. The washery was in operation. Possibly there were times when its output of the

marketable product was greater than its shipments; yet it paid for the output only as it was shipped. The accumulated output at the time of sale, if any, belonged to the lessor, and was properly excepted. The culm piles on the land conveyed might in the course of time, by the continued operation of the washery, become exhausted, and the portion of the culm piles on the lands retained by the grantor might be washed. Such portion of the "culm piles" was not excepted by the first part of the reservation, for the portion of the piles now under consideration was not upon the land conveyed; yet it was conceivable that there might in the future be upon the land conveyed accumulations of washed coal or culm obtained therefrom. As such coal or culm would likewise not be paid for when brought upon the land conveyed to the lessee, but only when shipped, prudence and caution required, or at least permitted, the insertion in the exception of the words "may be," to cover possible future accumulations from that source. It was not necessary to prove that there were any accumulations of marketable output of the washery upon the land at the date of the deed, for the exception did not require any, the second portion thereof being contingent.

Still again, the lease under which the Hawley Company was operating by the written consent of the Pennsylvania Company contemplated the separation of the original culm piles into two classes of material —marketable product and residuum. It gave a name to each class. The former it denominated "coal" or "culm"; the latter it designated as "refuse slate, culm, etc." Yet "coal" and "culm" are the words of the exception in the deed, and "refuse slate, culm, etc.," are not there used. Had the Pennsylvania Company intended the exception in the deed to embrace the refuse, ordinary prudence would have required that the designation given to it in the lease, or words of equal certainty, be used in the deed.

These circumstances, taken in connection with the utter worthlessness of the refuse at the date of the deed and for many years thereafter, and with its abandonment by the Pennsylvania Company, we think, make the defense complete.

The decree of the court below must be affirmed.